IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM GUNN, Individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) **CLASS ACTION COMPLAINT** |
| v. | ) ) |
| PROSPECTS DM, LLC | ) ) Case No.: 4:19-cv-3129 |
| & | ) ) |
| ICOT HEARING SYSTEMS, LLC d/b/a LISTENCLEAR | ) ) ) |
| & | ) ) |
| ICOT HOLDINGS, LLC | ) ) |
| & | ) ) |
| JOHN DOE CORPORATIONS 1 THROUGH 10, and OTHER JOHN DOE ENTITES 1 THROUGH 10, all whose true names are unknown. | ) ) ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) |

**COMPAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff William Gunn, individually and on behalf of all others similarly situated, and through undersigned counsel, and for his Complaint against Defendants, Prospects DM, LLC, John Doe Corporations, Other John Doe Entities, ICOT Hearing Systems, LLC d/b/a ListenClear, and ICOT Holdings, LLC, and for their violations under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"), states to the Court as follows:

**INTRODUCTION**

1.      The TCPA was enacted in response to widespread public outrage about the

proliferation of intrusive, nuisance telemarketing practices. Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012).

2. Defendant ICOT Hearing Systems, LLC d/b/a ListenClear ("ListenClear") is owned and controlled by Defendant ICOT Holdings, LLC ("ICOT").

3. Defendant ListenClear manufactures and sells hearing devices. Upon information and belief, its marketing structure is based on offering a free thirty-day trial to individuals.

4. Defendant ListenClear and ICOT commissioned or otherwise encouraged Defendant Prospects DM, LLC ("PDM"), and upon information and belief, numerous other corporations and vendors, to make auto-dialed calls to individuals across the country.

5. Unfortunately, Defendants do not obtain prior express written consent to place these autodialed telemarketing calls and, therefore, are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

6. These autodialed calls placed by Defendants caused Plaintiff and class members to suffer actual harm and legal injury. Plaintiff has suffered aggravation, invasion of privacy, nuisance due to receiving such calls. Plaintiff and class members suffered from the diminished use, enjoyment, utility, and value of their telephones as these calls interfered with their access to their cell phones.

7. The TCPA was enacted to protect consumers from unauthorized and unwanted autodialed calls exactly like the ones alleged in this case. See Mims v. Arrow Fin Servs., LLC, 132 S.Ct., 740, 745 (2012). Defendant placed these autodialed calls despite the fact that Plaintiffs never provided Defendant with prior express written consent to receive them.

8. Senator Hollings, the TCPA's sponsor described these autodialed calls as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).

9. By placing the autodialed calls at issue, Defendant has violated the privacy and statutory rights of Plaintiff and caused him to suffer actual harm by subjecting him to the aggravation that necessarily accompanies the receipt of such repeated and unauthorized autodialed calls.

10. Plaintiffs therefore seek an injunction requiring Defendant to stop using an autodialer to place telemarketing calls to telephones, as well as an award of actual and statutory damages, together with costs and reasonable attorneys' fees.

## PARTIES

11. Plaintiff William Gunn ("Plaintiff") is a resident of the State of Missouri.

12. Defendant PDM is a limited liability company organized in the state of California with its mailing address at 603 Seagaze Drive, Suite 817, Oceanside, California 92054 that conducts business throughout this state and throughout the country.

13. Defendant ListenClear is a limited liability company organized in the state of Georgia with its headquarters located at 300 Bull St. Suite 200, Savannah, Georgia 31401 that conducts business in this state and throughout the country.

14. Defendant ICOT is a limited liability company organized in the state of Georgia with its headquarters located at 300 Bull Street, Suite 200, Savannah, Georgia 31401 that conducts business in this state and throughout the country

15. Defendant ICOT has control over the conduct and actions of ListenClear.

16. Defendant ICOT, upon information and belief, controls ListenClear's marketing strategy, including its decision to employ unlawful telemarketing strategies.

17. Defendant ICOT is vicariously liable for ListenClear's actions as they had agency over determining marketing strategies, who received calls, and how these were limited.

18. Upon information and belief, Defendants John Doe Corporations 1 through 10 (the "Corporate Defendants") are corporations, the names and addresses of residence of which are unknown.

19. Upon information and belief, Defendants Other Entity Defendants 1 through 10 (the "Other Entity Defendants") are other legal entities, the names of addresses of residences of which are unknown.

## JURISDICTION AND VENUE

20. This Court has personal jurisdiction over Defendants because Defendants transact business within this state, have made contracts within this state, and/or have committed tortious acts within this state and otherwise have sufficient minimum contacts with the State of Missouri.

21. Venue is proper because a substantial part of the events, actions, and omissions of Defendants, which give rise to the claims and subject Defendants to liability for this telemarking campaign, occurred in this circuit.

22. Plaintiff is an individual located in St. Louis, Missouri.

23. This Court has personal jurisdiction over Defendants because they conduct business in this Circuit and the events giving rise to this lawsuit occurred in and emanated from, in substantial part, this Circuit.

## TCPA BACKGROUND

24. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

25. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

4

Residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

- - -

Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. *Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

### The TCPA imposes vicarious liability on third-parties who do not physically dial the calls

26. Under the TCPA, a seller of a product or service may be vicariously liable for a third-party marketer's violations of Sections 227(b) and 227(c), even if the seller did not physically dial the illegal call, and even if the seller did not directly control the marketer who did. *In re Joint Pet. Filed by Dish Network, LLC*, FCC 13-54 ¶ 37, 2013 WL 193449 (May 9, 2013) ("FCC Ruling").

27. A seller is liable under Sections 227(b) and (c) when it has authorized a telemarketer to market its goods or services. *Id.* ¶ 47.

28. Additionally, a seller may be vicariously liable for violations of those provisions under principles of apparent authority and ratification. Factors relevant to a finding of vicarious liability include:

 a. Whether "the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including…access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information,"

 b. Whether the outside sales entity can "enter consumer information into the seller's sales or customer systems,"

5

   c. Whether the outside sales entity has "the authority to use the seller's trade name, trademark and service mark,"

   d. Whether the "seller approved, wrote or reviewed the outside entity's telemarketing scripts," and

   e. "Whether the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct." *Id.* ¶ 46.

## FACTUAL ALLEGATIONS

29. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

30. On or about March 2019, Plaintiff began receiving phone calls from telemarketing representatives of PDM, Corporate Defendants, and Other Entity Defendants, all purportedly calling on behalf of Defendants ICOT and ListenClear.

31. Defendant PDM, Corporate Defendants, and Other Entity Defendants called Plaintiff in an attempt to sell or otherwise coerce Plaintiff into engaging with Defendant ListenClear, and by extension, Defendant ICOT.

32. Plaintiff has never used ListenClear products, contracted with ListenClear, or otherwise given ListenClear permission to contact him.

33. Plaintiff is the regular user and only individual assigned to the phone number 314-785-1255 and was the recipient of Defendants' phone calls to that number.

34. Plaintiffs caller ID identified the calls from Defendant as being initiated from numerous phone numbers that appear to have been "spoofed," or numbers that appear to be legitimate phone numbers but are actually autodialed telemarketing calls from Defendants.

35. When Plaintiff answered these phone calls there was not a human salesperson on the line, but rather an automated robotic voice.

36. Plaintiff has received at least one hundred and fifty (150) calls from Defendants in which Plaintiff did not consent to receiving.

37. Upon information and belief, Plaintiff has received well in excess of one hundred and fifty (150) calls, as to be determined in the discovery phase.

38. Plaintiff has not given written consent to receive telemarketing calls from, or on behalf of, ICOT, ListenClear, or Corporate Defendants and Other Entity Defendants.

39. In fact, Plaintiff on several occasions demanded to be placed on the "Do Not Call" list for PDM, Corporate Defendants and Other Entity Defendants, and by extension ListenClear, and ICOT, yet these repeated demands were ignored.

40. Plaintiff repeatedly asked the agents/representatives of Defendants to stop calling him. Plaintiff made very clear that he did not consent in any way to the phone calls being placed.

41. Plaintiff has had to constantly endure these phone calls throughout his workday as they invaded upon his privacy and solitude.

42. As Plaintiff works in a school as a college advisor, he does not have the option of simply ignoring any number he does not recognize. Plaintiff must answer these calls in case they are the numbers of parents, administrators, or other school staff.

43. Upon information and belief, some or all of the calls the Defendants made to the Plaintiff's telephone number were made using an "automatic telephone dialing system" which has the capacity to store and produce telephone numbers to be called, using a random or sequential number generator or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C. § 227(a)(1).

44. On several occasions, Plaintiff instructed Defendants' agents/representatives to stop calling his device.

7

45. Despite clearly and unequivocally revoking any consent Defendants may have believed they had to call Plaintiff, Defendants continue to place automated calls to Plaintiff.

46. In fact, several of Defendants' representatives acknowledged that per the Defendants' internal communications, Plaintiff was supposed to have been placed on the internal Do Not Call List within their "systems."

47. Upon information and belief, Defendants' "systems" include an auto-dialer system and an internal Do Not Call List.

48. Upon information and belief, Defendants continued to call individuals placed on the internal Do Not Call List despite consumer's requests to be placed on such a list.

49. Each subsequent call Defendants made to Plaintiff's telephone was knowing and willful and done so without the express consent of Plaintiff.

50. Defendants intentionally harassed and abused Plaintiff on numerous occasions by calling up to eight times in one day and calling multiple days in a row with such frequency as can reasonably be expected to harass.

51. Upon information and belief, Defendants ICOT and ListenClear have engaged in a business strategy that includes marketing through illegal telemarketing calls.

52. Upon information and belief, Defendants PDM, Corporate Defendants, and Other Entity Defendants have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's line in this case.

53. Upon information and belief, Defendant PDM's, Corporate Defendants', and Other Entity Defendants' corporate policies are structured so as to continue to call individuals like Plaintiff, on behalf of other companies that seek to harass consumers, despite these individuals explaining to all Defendants that they want the calls to cease.

54. Not a single call placed by Defendants to Plaintiff was placed for "emergency purposes" as specified in 47 U.S.C. § 277(b)(1)(A).

55. Defendants willfully and knowingly violated the TCPA with respect to Plaintiff.

56. Each phone call placed by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of invasion of privacy and the intrusion upon his right of seclusion.

57. Each phone call placed by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of unnecessary expenditures to his time. For the calls Plaintiff answered, the time spent on these calls was unnecessary as Plaintiff repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time silencing the call or waiting for the phone to stop ringing and Plaintiff had to waste time to check his voicemail. This also impaired the usefulness of Plaintiff's phone, which is designed to inform the user of important and legitimate missed communications.

58. Each phone call placed by Defendants to the Plaintiff's phone without consent caused Plaintiff to suffer the injury of occupation of his phone line by unwanted calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendants' calls.

59. Each phone call where a voice message was left by Defendants without the consent of the Plaintiff occupied space in Plaintiff's phone.

60. Every phone call placed by Defendants without express consent to Plaintiff's phone resulted in injury of trespass to Plaintiff's chattel, namely his telephone.

61. As a result of the calls described above, Plaintiff was affected in a personal and individualized way through stress, anxiety, nervousness, distress and aggravation.

62. ICOT officers and directors control ListenClear's sales and marketing strategy, including its decisions to solicit the unlawful use of autodialers.

9

63. Upon information and belief, ICOT and ListenClear arbitrarily share and allocate funds amongst themselves.

64. ICOT has taken out, and paid for, insurance policies that list ListenClear as the insured.

65. ICOT and ListenClear have a unity of business interest and operate under the ListenClear brand.

66. ListenClear has no separate interests or functions that exist outside of ICOT's interests and functions.

67. A corporation or other entity that contracts out its telephone marketing may be held vicariously liable under federal common law principles of agency for violations of section 227(b) or section 227(c) that are committed by third-party telemarketers.

68. ListenClear and ICOT are thus directly liable for PDM's, Corporate Defendants', and Other Entity Defendants' telemarketing calls because, upon information and belief, they actively participated in the calls by allowing such an outside entity access to information and systems that normally would be within the seller's exclusive control by giving PDM, Corporate Defendants, and Other Entity Defendants access to its calling systems.

69. ListenClear and ICOT maintain interim control over PDM, Corporate Defendants, and Other Entity Defendants, as they hired these companies to perform tasks and dictated parameters for potential prospects.

70. ListenClear and ICOT knew, or should have known, that PDM, Corporate Defendants and Other Entity Defendants were violating the TCPA on its behalf and failed to take effective steps within its power to force these companies to cease such conduct. ListenClear and ICOT tacitly consented to such actions by not reasonably investigating or preventing such conduct.

## CLASS ALLEGATIONS

71. This action is brought as a class action. Plaintiff brings this action on behalf of himself

and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

72. The identities of all class members are readily ascertainable from the records of PDM, Corporate Defendants, Other Entity Defendants, ICOT and ListenClear.

73. Excluded from the Plaintiff's Class is PDM, Corporate Defendants, Other Entity Defendants, ICOT, ListenClear, and all officers, members, partners, managers, directors, and employees of PDM, Corporate Defendants, Other Entity Defendants, ICOT, and ListenClear, and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

74. There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether PDM, Corporate Defendants, Other Entity Defendants, ICOT, and ListenClear's communications with the Plaintiff, such as the above stated claims, violate provisions of the TCPA and Missouri Consumer Fraud and Deceptive Business Practices Act Chapter 407.

75. Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

76. Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause them not to vigorously pursue this action.

77. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    a. **Numerosity**: Plaintiff is informed and believes, and on that basis alleges, that

the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

      b. **Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The principal issues are whether PDM's, Corporate Defendants', and Other Entity Defendants' communications with the Plaintiff, as directed by ICOT and ListenClear, such as in the above stated claims, violate provisions of the TCPA and Missouri Consumer Fraud and Deceptive Business Practices Act.

      c. **Typicality**: Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of Plaintiff's Class defined in this complaint have claims arising out of the Defendants' common uniform course of conduct complained of herein.

      d. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

      e. **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is

appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudication which could establish incompatible standards of conduct for Defendants who, upon information and belief, instigate the autodialed calling of non-consenting individuals throughout the United States of America and throughout Missouri.

78. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate provisions of the TCPA, and is tantamount to declaratory relief and any monetary relief under the TPCA would be merely incidental to that determination.

79. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

80. Further, PDM, Corporate Defendants, Other Entity Defendants, ICOT, and ListenClear have acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

81. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

82. This cause of action is brought on behalf of Plaintiff and the members of a class.

83. The class consists of all persons whom Defendants' records reflect resided in the State of Missouri and who were called with an auto-dialed by PDM, Corporate Defendants, and Other Entity Defendants, at the instruction of ICOT or ListenClear and (a) who had not given written consent to be subjected to these calls; or (b) had explicitly revoked or made clear the lack of consent

to make such calls; and (c) the Plaintiff asserts that the phone calls described contained violations of the TCPA and Missouri Consumer Fraud and Deceptive Business Practices Act for making autodialed telemarking calls in which they had no authority or right to make to Plaintiff and all those in the Class.

## COUNT I

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

84. Plaintiff, individually and on behalf of all others similarly situated, incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

85. The foregoing acts and omissions of the Defendants constitute violations of the TPCA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq*.

86. Defendants violated the TCPA by (a) initiating a telephone call using an automated dialing system to Plaintiff's telephone number assigned to him, or (b) by the fact that others caused the initiation of those calls on its behalf. *See* C.F.R. 64.1200(a)(1)(iii); 47 U.S.C. § 227(b)(1).

87. The TCPA provides a private right of action, wherein a person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

    a. An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation.

    b. An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater; or

    c. Both such actions.

88. The Court, in its discretion, may treble the statutory damages if the violation was knowing. 47 U.S.C. § 227.

89. The TCPA is a strict liability statute and Defendants are liable to Plaintiff, individually, and on behalf of all others similarly situated, even if their actions were only negligent.

90. Defendants knew or should have known that: (a) Plaintiff had not given express permission or invitation for Defendants or anyone else to initiate a telephone call using an automated dialing system to Plaintiff's telephone number to solicit advertisements about Defendants' goods or services.

91. If the Court finds that Defendants knowingly violated this subsection or the regulations prescribed under this subsection, the Court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (b) of this paragraph. 47 U.S.C. § 227(b)(3).

92. Plaintiff, and all others similarly situated, is also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following relief against the Defendants:

    a. Injunctive relief prohibiting such violations of the TCPA by the Defendant in the future;

    b. As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA;

    c. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff, and all others similarly situated, seek $500 in statutory damages for each and every call that violated the TCPA;

    d. A declaration that Defendants' conduct violated the TCPA and that this action is just and proper;

  e. An award of costs and such further relief as the Court may deem just and proper;

  f. That this Court award pre-judgment and post-judgment interest at the statutory rate of 9%;

  g. That this Court award Plaintiff's its attorney fees and all expenses incurred in preparing and prosecuting this claim; and

  h. Such other relief as this Court may deem just and proper.

## COUNT II

### VIOLATIONS OF MISSOURI CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT Chapter 407

93. Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

94. In accordance with Chapter 407, Plaintiff, and all others similarly situated, bring Count II for Defendants' unfair practice of making unsolicited and unlawful telephone calls while using an automated dialing system to Plaintiff's telephone number:

> All persons who, on or after four years prior to the filing of this action, were sent telephone messages by or on behalf of Defendants with respect to whom Defendants cannot provide evidence of prior express permission or invitation.

95. Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri public policy, which public policy violations in the aggregate caused substantial injury to Plaintiff.

96. Defendants' misconduct caused damages to Plaintiff, including loss of the exclusive use of his telephone, loss of time, and emotional distress.

97. Plaintiff routinely uses his telephone. Defendants' actions prevented Plaintiff from using his telephone during the time Defendants contacted Plaintiff's telephone for Defendants' unlawful purposes. Plaintiff lost valuable time receiving Defendants' unlawful telephone calls.

16

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court grant Plaintiff, and all others similarly situated, the following relief against the Defendants:

a. That this Court award judgment against Defendant in a total amount in excess of the $25,000 jurisdictional amount of this Court to be proven at trial;

b. That this Court award damages to Plaintiff, and all others similarly situated;

c. That this Court award treble damages to Plaintiff, and all others similarly situated, for knowing violations of the TCPA;

d. That this Court award punitive damages to Plaintiff, and all others similarly situated;

e. That this Court declare that Defendants' conduct violated the TCPA and that this action is just and proper;

f. That this Court award Plaintiff, and all others similarly situated, damages and attorney fees for violation of The Missouri Consumer Fraud and Deceptive Business Practices Act Chapter 407;

g. That this Court award Plaintiff's attorneys' fees and costs;

h. That this Court award Plaintiff all expenses incurred in preparing and prosecuting these claims;

i. That this Court enter an injunction prohibiting Defendants from such violations of the TCPA by the Defendants in the future; and

j. Awarding such further relief as this Court may deem just and proper.

Dated: November 21, 2019

                                            Respectfully Submitted,

                                            **HALVORSEN KLOTE**

By:    /s/ Samantha Orlowski

                Samantha J. Orlowski, #72058
                Joel S. Halvorsen, #67032
                680 Craig Road, Suite 104
                St. Louis, MO 63141
                P: (314) 451-1314
                F: (314) 787-4323
                sam@hklawstl.com
                joel@hklawstl.com
                *Attorneys for Plaintiffs*